IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAWRENCE DALE ST. JOHN, | § | |
| Movant, | § | |
| | § | |
| | § | 3:17-CV-223-N (BT) |
| v. | § | 3:12-CR-310-N (BT) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Movant Lawrence St. John, a federal prisoner, filed a motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255. The District Court referred the resulting civil action to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the magistrate judge recommends that the motion be DENIED.

I.

Movant was convicted by a jury of conspiracy to commit healthcare fraud in violation of 18 U.S.C. § 1349 and thirteen substantive counts of healthcare fraud in violation of 18 U.S.C. §§ 1347 and 2. The District Court sentenced him to 262 months in prison. His conviction and sentence were affirmed on direct appeal, *see United States v. St. John*, 625 F. App'x 661 (5th Cir. 2015), and the Supreme Court denied certiorari, *St. John v. United States*, 136 S. Ct. 912 (2016). Movant then filed the instant Section 2255 motion, in which he argues:

1

1. He received ineffective assistance of trial counsel when counsel:

    (a) failed to adequately investigate the case;

    (b) failed to develop a trial strategy, regularly visit him in jail, or obtain a preliminary hearing;

    (c) failed to obtain expert and other witness testimony;

    (d) failed to file a motion to dismiss the indictment;

    (e) failed to move to exclude extrinsic evidence;

    (f) failed to raise issues at sentencing;

    (g) failed to have sufficient experience;

    (h) allowed the court to use a preponderance of evidence standard and consider relevant conduct at sentencing;

2. He received ineffective assistance of appellate counsel when counsel failed to raise his ineffective assistance of trial counsel claims.

3. The prosecutor committed misconduct; and

4. The trial court erred.

## II.

As stated above, Movant was convicted of conspiracy to commit healthcare fraud in violation of 18 U.S.C. § 1349, as well as various substantive counts of healthcare fraud in violation of 18 U.S.C. §§ 1347 and 2. The following factual background describing Movant's conduct with respect to the offenses of conviction is taken from the appellate opinion.

[Movant] founded A Medical, a physician housecall company, in 2009. He employed both a physician, Dr. Nicholas Padron, and [co-defendant] Jeffrey St. John.[1] Traditionally, physician housecall companies craft care plans to help homebound patients regain mobility. To receive reimbursement for these services, the companies must spend at least thirty minutes per month on [care plan oversight ("CPO")]. CPO may be performed by a nurse or physician's assistant under the "direct supervision of the doctor that actually signed the plan." The Government alleged that A Medical manipulated the system by fraudulently billing Medicare for alleged CPO that did not satisfy these requirements. For instance, [co-defendant] Jeffrey St. John instructed an employee to bill for CPO although no such work occurred, while [Movant] encouraged an employee to bill for at least $30,000 in CPO per week, irrespective of whether it reflected the true amount of CPO performed.

A steady stream of patients was integral to A Medical's scheme. Without patients, A Medical would not be able to submit claims to Medicare. Traditionally, physician housecall companies certify a patient as homebound by submitting a "485 form" to Medicare and then referring those patients to an HHA for care. Here, the process worked in reverse. HHAs brought patients to A Medical for certification. By certifying a patient as homebound, A Medical ensured that it maintained a steady stream of patients, while the HHAs also obtained patients on whose behalf they could bill Medicare. [Movant] conceded that A Medical's volume of patients, and therefore its ability to bill Medicare, was dependent on receiving referrals from HHAs. According to the Government, this created an incentive for impropriety – HHAs referred patients to A Medical in exchange for A Medical's near-certain certification of those patients as homebound. Although Dr. Padron, as A Medical's physician, signed the 485 forms certifying patients as homebound under threat of criminal or civil penalty, he testified he signed "almost everything," or "99%" of the

---

[1] Dr. Padron was charged as a co-conspirator in this scheme but ultimately pleaded guilty and testified against Movant and Jeffrey St. John at trial.

3

> 485 forms [Movant] put in front of him. According to the Presentence Report ("PSR"), many of those patients were not, in fact, homebound. Furthermore, Dr. Padron admitted that he did not supervise A Medical's nurses and physician assistants as required by law.
>
> At sentencing, the district court adopted the PSR's recommendation that the Defendants be held culpable for losses stemming from the fraudulent CPO claims as well as losses from fraudulent cognitive testing and nursing, fraudulent certification of patients as homebound, and all of the bills submitted by HHAs to Medicare for patients A Medical certified as homebound. The district court also adopted the PSR's loss calculations. It found the St. Johns' intended loss on claims submitted by A Medical to Medicare to be $1,463,716.14 and the actual loss to be $653,794.18. It also included the bills submitted by the HHAs to Medicare in the loss analysis, which resulted in an intended loss of $9,733,195.20 for services provided to patients of A Medical, and an actual loss of $8,957,445.87 that Medicare paid on these claims. The PSR calculated the total intended loss to be $11,196,911.34 and the actual loss to be $9,611,240.05.

*St. John*, 655 F. App'x at 663-664.

### III.

**1. Ineffective Assistance of Counsel**

To sustain a claim of ineffective assistance of counsel, Movant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Movant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight."

4

*Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, a Movant must prove prejudice. To prove such prejudice, Movant must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### A. Investigation

Movant claims trial counsel failed to adequately investigate the case. He argues an investigation would have shown that: (1) there was no meeting of the minds to establish a conspiracy; (2) all medical procedures were performed; (3) there was no fraud because CPOs could be done when Dr. Padron was out of town; (4) an expert witness would have testified that A Medical performed care CPO, and (5) business associates, doctors, employees and other witnesses would have testified for the defense.

Movant's claims are without merit. He has submitted no evidence that an expert, or any other uncalled witness, would have testified favorably for the defense. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating

5

that to establish the requisite *Strickland* prejudice, movant must show the testimony would have been favorable); *see also See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ . . . ."). Dr. Padron also testified that he conspired with Movant to committed the offenses, and that he performed no CPO when he was out of town. (ECF No. 187 at 11-16; 18.) Defense counsel thoroughly cross-examined Dr. Padron on his testimony. Movant has failed to establish that there is a reasonable probability that the result of the trial would have been different with any further investigation.

### B.   Conclusory Claims

Movant claims trial counsel failed to: (1) regularly visit him in jail prior to trial; (2) develop a trial strategy; and (3) obtain a preliminary hearing.

Movant's claims are conclusory. He has failed to state how he was prejudiced when his counsel did not visit him more often and failed to explain what different strategy his counsel should have used. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings). Movant was also not entitled to a preliminary hearing because he was indicted prior to his arrest. *See* Fed. R. Crim. P. 5.1 (stating a preliminary hearing must be conducted unless the defendant is indicted). Movant's claims should be denied.

### C. Motion to Dismiss Indictment

Movant claims his trial counsel was ineffective when counsel failed to argue for dismissal of the indictment after Dr. Padron testified that he had no agreement with Movant to defraud Medicare.

The record shows Movant's counsel asked Dr. Padron, "[W]hen did you make an agreement with [Movant] to defraud Medicare?" Padron responded, "We didn't have an agreement, per se, to do something like that, no." (ECF No. 187 at 18.) Dr. Padron, however, also testified that he did conspire and combine with Movant to defraud Medicare as alleged in the indictment. (*Id.*) This testimony was consistent with Dr. Padron's Factual Resume in which he admitted that he knowingly conspired with Movant to defraud Medicare. (ECF No. 68.) Movant has failed to show his counsel was ineffective for not moving to dismiss the indictment after Dr. Padron's testimony.

### D. Extrinsic Evidence

Movant argues trial counsel was ineffective when counsel failed to file a motion to exclude extrinsic evidence or hold a hearing on the Government's motion to admit extrinsic evidence. Movant claims this evidence was highly prejudicial and confusing to the jury.

The record shows defense counsel filed a response to the Government's notice of extrinsic evidence objecting that the evidence was not relevant, would confuse the jury, and that the danger of unfair prejudice outweighed any probative value of the evidence. (ECF No. 92.) Defense counsel also requested a

7

hearing outside the presence of the jury before any of this evidence was introduced at trial. (*Id.*) Movant's claim is without merit.

### E. Lack of Experience

Movant claims he received ineffective assistance of counsel because his trial counsel lacked experience in health care fraud cases. Movant, however, has failed to specify how this alleged lack of expertise prejudiced his defense and what specific actions counsel failed to perform due to a lack of expertise in health care fraud. Movant's conclusory allegations should be denied.

### F. Preponderance of the Evidence Standard

Movant argues trial counsel was ineffective when counsel did not object to the court applying a preponderance of the evidence standard at sentencing. Movant claims that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the sentencing factors must be proved to a jury beyond a reasonable doubt. It is well-settled, however, that sentencing factors must only be proven by a preponderance of the evidence, and that the court may draw reasonable inferences from the facts presented. *See United States v. Muniz*, 803 F.3d 709, 712 (5th Cir. 2015) (quoting *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010)). Movant's counsel was not required to make frivolous objections. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). This claim should be denied.

### G. PSR

Movant argues trial counsel was ineffective when counsel failed to challenge facts in the PSR. First, Movant claims counsel failed to challenge the

loss amount. The record shows, however, that defense counsel filed objections to the PSR challenging the loss amount. (*See* ECF No. 146 at 2-3.) Movant also claims defense counsel failed to object that the PSR stated he was the owner of A Medical and that he testified untruthfully. Defense counsel, however, raised these arguments in his objections to the PSR. (*Id.* at 4, 6.) Finally, Movant objects to paragraph 49 in the PSR finding that Movant was an organizer of the scheme to defraud Medicare. Defense counsel filed objections to this finding as well, arguing that Movant was not an organizer and that the bills to Medicare were mistakes that Movant "wishes he had caught sooner than he did." (*Id.* at 4.) Movant's claims are without merit.

### H.   Appellate Counsel

Movant also claims he received ineffective assistance of appellate counsel because counsel failed to raise his trial counsel claims on appeal. As discussed above, however, Movant's trial counsel claims are without merit. Appellate counsel was not ineffective for failing to raise meritless claims. *Gibson*, 55 F.3d at 179.

## 2.   Prosecutorial Misconduct

Movant further argues the prosecutor committed misconduct when he: (1) admitted Government's Exhibit Number 1, which was a forgery; (2) allowed a Government witness to perjure himself regarding the provider number listed on Government's Exhibit No. 3; and (3) intentionally misled and confused the jury.

The Government argues this claim is procedurally barred because Movant failed to raise the claim on direct review. When a defendant fails to raise a claim on direct appeal, the claim is procedurally defaulted and can only be considered under Section 2255 if the Movant can show cause for his failure to raise the claim on direct appeal, and actual prejudice, or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Here, Movant argues appellate counsel was ineffective when counsel failed to raise his prosecutorial misconduct claim on direct review. A Movant can show cause and prejudice by showing that counsel rendered constitutionally ineffective assistance of counsel. *See United States v. Patten*, 40 F.3d 774, 776 (5th Cir. 1994). The Court will therefore consider Movant's prosecutorial misconduct claim on the merits.

Prosecutorial misconduct implicates due process concerns. *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). When a Movant asserts a due process violation, the Court must determine whether the prosecutorial comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly,* 416 U.S. at 642).

Movant argues that his signature on Government's Exhibit 1 was a forgery, that Government witness Scott Ward committed perjury when he testified that A Medical used provider number 2166, as shown on Government's Exhibit 3, and that the prosecutor intentionally misled the jury about the various business entities involved. The record shows that the defense stipulated to the admissibility of Government Exhibits 1 and 3. (ECF No. 185 at 6; 135.) The court specifically asked if Movant had any objection to Government's Exhibit 1, and the defense responded that he did not object. (*Id.* at 154.) Further, witness Scott Ward testified that Exhibit 3 showed that A Medical Housecalls used provider number 2166. (*Id.* at 151.) Movant has failed to show this testimony was perjured. Finally, Movant has submitted no evidence that the prosecutor intentionally misled the jury. Movant's prosecutorial misconduct claims should be denied.

### 3. Trial Court Error

Movant claims the trial court erred when it denied his request for an expert witness, and when it overruled co-counsel's objection to a witness reading from Exhibit Number 1.

As stated above, Movant has failed to submit any evidence that an expert witness would have testified favorably for the defense. He has also failed to show the court erred when it allowed limited reading from an exhibit that was admitted into evidence without objection. Movant's conclusory claims should be denied.

IV.

For the foregoing reasons, the Court recommends that Movant's Section 2255 be DENIED with prejudice.

Signed July 16, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).